The opinion of the court was delivered by .
•DuNCAN, J.
The action of ejectment is one of possession; and it is no bar to a recovery that another possesses a right of way, or other easement, for the owner of the soil may maintain an ejectment for land over which a highway is laid out; because,, though the public have a right to pass over it, yet the freehold and all the profits belong to the owner, and he may use it in any way not inconsistent with the public right or easement. - Chester v. Alker, 1 Burr. 138. 145. Curtelyou v. Vanbrunt, 2 Johns. 357. Jackson v. Hathaway, 15 Johns, 447. The plaintiff below sued to recover the possession of a certain described tract of land, the right to which is admitted to be in him, If the defendant did not disposess'the plaintiff; if he was not in the actual possession; on the general issue, the only plea in ejectment, “ not guilty,” he might have defeated the plaintiff; for the allegation in his writ is, “ that the defendant has in his actual possession,” &c. The return of the sheriff, by the act of 13th April, 1807, is made evidence of such defendants as are marked served by the sheriff, being in actual possession of the whole or part of the premises, and this whether their names are in the writ, or added by the sheriff, on fining them in possession; but this is only prima facie evidence, and the defendant may rebut.it by showing, that he was not in possession. This was a very necessary amendment of the law; for under the ancient form of ejectment, the *32 plaintiff, though, defendant confessed lease entry and ouster, was frequently taken by surprise by a defendant calling on him to prove his possession. On the trial, the defendant, Robb, appeared, and pleaded not guilty, with leave to take a special defence. When Cooper, the landlord, was admitted to become a defendant, he very specially defends as for a ferry on tire Youghiogany river, where the great road from Somerset intersects the Mount Pleasant and Robbstown road, to Washington, Pennsylvania, and crosses said river, at or near the land mentioned in the writ; and also, for a landing place for the boats and craft of the said ferry, on the south side of the said river, being fifty feet in length up and down the said river, and extending-ten feet from said river along said great road. This right of way and of landing on the ground of another, is claimed, first under tile act of 11th March,, 1784, giving John Sumral a right to ferry across Youghiogany river. The act contains this clause, ■“ Provided always, that nothing contained in-this act shall be construed to vest a right in the said John Sumral, his heirs or-assigns, to land any boat or boats upon a landing belonging to any other person or persons, without their consent first had and obtained;” and 'all the acts of assembly vesting ferries in particular persons, show the uniform opinion of the legislature to have'been, that to enable a person to keep such ferry, he must either hold the ground where the landing is made, or obtain the consent of the owner of the land for that purpose. In Chambers v. Furey, 1 Yeates, 167. when the right to land and receive freight on the lands of another,' on the banks of a navigable stream without his consent, was first agitated, this very act authorising Sumral to keep a ferry, was relied on as evidence of legislative construction, that.there is no right, custom,' or prescription, in Pennsylvania, by which one man can land or receive freight, on another’s freehold, on the , banks of a navigable river, without his consent, even though it be on a public highway, SumraVs appears to be the first legislative act granting a right to a ferry. An act passed the same day, vesting a ferry over the' Monongahela river, in John Ormsby, with a special proviso as to landing boats on lands belonging to others without their consent first obtained, and every law passed since contains a similar .clause. It would be a violation of the constitution to deprive the owner of the soil of this right, and the legislature have always carefully guarded against such construction by the most explicit declarations. The right to the bed of a navigable river is presumed to belong to the commonwealth, but the right to the adjoining lands vests in the owner of the soil; hence arises the right to wharves in the.city of Philadelphia, and other commercial ports — no one can use them without making compensation to the owner. The place where the landing was, if a public highway, in an.action of trespass would not be a justification. The position of the court, that Surrtral might lawfully ferry and land his boats On the public road, was erroneous, for this was the very question in
i *33 Chambers v. Furey; and C. J. M‘KeaN and! Justice Yeates decided, that the dedication of ground for the purposes of a public road, gave no right to others to use it without the consent of the owners, for the purposes of landing or receiving freight. ' There are few ferries whose landing place is not a public highway; ferries would become a property in common, subject to continual strife, and where the strongest must ever prevail. ■ The common law to prevent this confusion, assigns the-exclusive right of all property capable of being so enjoyed, to some determinate owner. It has assigned to the owner of the soil, the right of landing on his own soil, on the banks of all navigable rivers. The late proprietors of Pennsylvania claimed a right by prerogative to. grant patents for ferries; but they never did grant a patent where the party was not possessed of lands-on both sides of the water, or at least had not the permission of the owner of the landing. The defendant sets up as a bar the act of limitations — 21 years’ possession. The possession to prevent a recovery, or vest a right in the possessor, must be actual, continued, exclusive. An easement claimed out of the land of another, can nev'er be the subject of such limitation, for it is not constant, exclusive and adverse. Indeed the counsel for the plaintiff seemed to abandon this as untenable, and to rely on the 3d and 4th errors assigned, which are in fact the same, and form but one point. Ought the court to have directed the jury from the enjoyment of this way and landing, proved by defendant, to have presumed a grant of any easement? And if the plaintiff in error had given any evidence to show, a continued exclusive possession and enjoyment, with the acquiescence of the owner of the inheritance, for 21 years, by way of analogy as to the time of the statute of limitations, the court should have left this to the jury as presumptive evidence of a right, by grant or otherwise; and unless contradicted or explained, the jury ought to believe it. Length of time cannot be said to be an absolute bar like a statute of limitations, but is only a presumptive bar to be left to ¿jury. This presumption of grant from long usage, is for the sake of peace and furtherance of justice. It cannot be supposed, where there has been'a long exercise and possession of such right, that any person would suffer his neighbour.to obstruct the lights of his windows, or render his house uncomfortable, or to use a way for so long a time with carts and carriages, unless there had been some agreement between the parties to that effect: but this principle must always be taken ,with this qualification, that the possession from which a party would presume a grant or easement, must be with the knowledge of the person seized of the inheritance, 2 Saund. 175. The evidence in this case is very far from proving any such possession. It does not possess one ingredient of it. It was not a continued, successive, uninterrupted enjoyment by Sumral and those claiming under him. He was the agent of Jl'llison the owner for some time; his tenant for some time; other tenants of ¿lilison’s occasionally used *34 the ferry, and there was at other times contention respecting it Besides, Robb set up a claim directly adverse, had a survey made cutting off a small strip, under the idle pretence that Allison’s survey did not come down to the water. That confining him to his distances on his survey, and to his marked lines, there would be a vacant spot by the water side. The surveyor marks the trees on the bank, but includes all to the water, and so represents and returns it. The riyer here is the boundary of Allison’s survey. The patent describes this as his boundary; the right of Allison is acknowledged by all,' and it is admitted by the special defence. Nor is there a spark of evidence to be left to a jury to presume a grant, either to Sumral or any claiming under him; but it excludes all presumption of agreement, or grant from Allison the owner: he never witnessed these intrusions, he never saw the land, he never acquiesced in these usurpations. Every act of Sumral’s was a trespass; it was contrary to the provisions of the act, vesting in him the right of ferry. The repetition of the trespass did not give a possession protected by the act of limitation. It might as well be contended? that a man entering into the woods of another, and cutting and carrying away his timber, and continuing the practices for 21 years or more, thereby acquired a right to the land by these vagrant acts of repeated trespass. The court are therefore clearly of opinion, that the plaintiff has failed in supporting any of the errors assigned. It might have been sufficient to have decided this case on one ground, that if the plaintiff in error had a right of easement, the only right which he claims, still the plaintiff below had the right to the soil and the possession;' but they have considered it proper to give an opinion on all the errors assigned.
Judgment affirmed.