Baldwin, J.
The gravamen of this action is the disturbance of the plaintiff’s franchise. A ferry is an incorporeal hereditament acquired from the public, and, in this country, granted by a special act of the legislature, or by some other competent authority under the provisions of a general law. It comprizes not merely the exclusive privilege of transportation, for tolls, across a stream or other body of water, but also the use for that purpose of the respective landings, with the outlets therefrom; without which the grant would be wholly nugatory. It is usually established upon some public road, of which it is a connecting link ; but the landings may be altogether private property, in which case the grant supposes that they belong to the grantee, or that he is entitled to the use thereof for the purposes of the ferry. In either case, the use of the landings and outlets is a part of the franchise, so far as the public is concerned. If they constitute portions of the highway, as they do where the ferry is on a duly established road, then the grant is a delegation of the use of the public easement, so far as is necessary for the purposes of the ferry; and no individual can have a right to question it. If they do not constitute portions of a highway, the question whether the grantee is the owner of the soil, or has acquired a right to use it for the pur *215 poses of the ferry, can only be made under an adverse claim of title. The grant of the franchise from the public, and the use of the ferry with its appurtenant landings and outlets, is all that need be established in an action by the grantee against a wrongdoer who disturbs his enjoyment. Nor is it material whether the disturbance is by invading the plaintiff’s right to the exclusive transportation and tolls, or by obstructing or impairing his navigation, or by destroying or injuring the landings and outlets ; quacunque via, the grievance is substantially the same, and consists not in the damage done to an estate or interest in the water or soil, but to the value or profits of the franchise.
The declaration in this case alleges, with sufficient certainty, the plaintiff’s right to the ferry, and to the use of the appurtenant ways and landings; and sets forth precisely the grievance complained of. The first count avers, in substance, that he was possessed of a legally established ferry; that there were good and convenient roads, ways and landings for the use of the same; that there was, and of right ought to have been, a free and uninterrupted passage for the water flowing in and down the river, so as not to affect or injure the landings, ways or roads at the ferry. The grievance is, that the defendants wrongfully placed obstructions in the river near the ferry and landings, by which the current of the stream was checked and diverted, and thrown from and upon the landings and outlets, in modes particularly described ; thereby occasioning the plaintiff great labour and expense, destroying or injuring the roads and landings, rendering the embarkation and debarkation difficult, and preventing the transportation of persons and property. The second count is the same, except that, instead of alleging a possession of the ferry by the plaintiff, it avers his right to the reversion thereof, expectant upon the term of his tenant, in whom the possession, use and enjoyment are charged to be; *216 and that the grievance complained of is to the prejudice of the plaintiff's reversionary estate.
What more, in relation to his right, was it incumbent upon the plaintiff to allege ? It was surely unnecessary to set forth the means by which the ferry was legally established, or the derivation of his title thereto. No averment of title on his part was at all necessary in the first count, founded upon his own possession, (1 Chitt. Plead. 413. 414.); and in the second, a general averment of his right to the reversion expectant upon the determination of his tenant’s term, was all sufficient. Id. 415. The declaration shews that the landings, ways and roads at the ferry were used for the purposes thereof, and so were appurtenant thereto ; and that of right they ought to have remained unaffected and unimpaired by a diversion or obstruction of the water. The plaintiff’s action is not for a common nuisance. The general navigation of the stream, and the travel on the road, regarded merely as such, may not have been in any wise impaired or impeded by the wrongful act of the defendants ; and if they were, the reason why an individual cannot maintain an action for a common nuisance, without shewing special damage', has no application to a case like this. The reason mainly is, that the damage being common to all the citizens of the commonwealth, no one can assign his particular proportion of it. Here, no such difficulty exists. It is true, if the road was a highway, the plaintiff and all the other citizens of the commonwealth had a right to pass along the road and across the ferry; but the plaintiff alone was entitled to the exclusive privileges of transportation and tolls, conferred by the grant of the franchise. These, and the incidental means of enjoying them, were possessed by him only, and no one else has a right to complain of the particular grievance alleged, namely the disturbance of his franchise, by which he alone has sustained da *217 mage, in the diminution of his profits. In truth, according to the case made by the declaration, the public at large could in no wise be prejudiced, but by the inability to cross the ferry safely and conveniently; and that resulted merely from the disturbance of the plaintiff’s franchise ; an immediate injury to him, for which he is entitled to redress.
There could be nothing in the objection that the plaintiff does not directly allege that he was possessed of the landings and outlets. By shewing the use of them to be appurtenant to the ferry, he has asserted all the possession of which the subject was susceptible. If they were private property, that can avail the defendants nothing, unless they can prove that it belonged to them ; which it will-be competent for them to do on the trial of the cause. The plaintiff need not assert or prove that he was the owner of the soil: the use for the purposes of the ferry is enough against a wrongdoer; and is even enough against the owner, if the right to that use has been acquired from him, or from those under whom he claims title; which is a mere matter of evidence to repel the prima facie right apparent from the enjoyment. It is true that in Saville, p. 11. pi. 29. it is asserted that in every ferry the land on both sides of the water ought to belong to the owner of the ferry, for otherwise he could not land on the other side. But this idea is repudiated in Peter v. Kendal &c. 6 Barn. & Cress. 703. in which it was held that he need not have property in the soil on either side. And this doctrine is no invasion of the right of private property ; for, while the grant of the franchise takes away the defence of exclusive ownership in another, it does not prevent the defendant from asserting it in himself. If the plaintiff were even the proprietor of the soil, it would not only be unnecessary, but perhaps improper, to aver it in the declaration ; inasmuch as the gravamen of the action is not an injury to the soil, *218 but to the incorporeal right of using it as an incident of \ r I . the franchise.
So, too, if the landings and outlets were parts of an established highway, the use of them for the purposes of the ferry is all the possession which the plaintiff could assert or prove ; and thus, in that aspect of the case, the only question really is whether, when a ferry is lawfully established on a public road, the grantee is entitled to the use of it for landings and outlets, as appurtenant to the ferry. And upon that question I can have no doubt, even as against the owner of the soil over which the road, as a public easement, passes ; though the question is not presented by the declaration, and can only arise upon the proofs. The ownership of the soil, it is true, is subject only to the public easement; but the delegation by thevpublic of the use of that easement to the grantee of the franchise, for the purposes of exclusive transportation and tolls, is a part of the grant, and not at all incompatible with the reserved rights of the owner of the soil; who can no more obstruct the travel and carriage across, than to and from the water; and if he does so by any means, it is at one and the same time a grievance to the grantee and the public, for which each is entitled to the appropriate remedy. When the ferry is a connecting link of a public highway, to say that the grantee has no right to land or receive freight in the highway on the banks of the stream, without the conse'nt of the owner of the soil, would be a most subtle and unreasonable proposition, and wholly at war with our statute, 2 Rev. Code, ch. 238. p. 261. 262. authorizing the county courts to establish ferries on public roads through water courses; the 1st section of which applies to cases where the applicant is the owner of the lands on both sides, and the 3d section extends the authority to those in which he is the owner on one side only : which last section is obviously founded upon the right of the *219 commonwealth to delegate the use of the easement to the grantee of the ferry, for the purposes thereof; and both sections necessarily refer the question of qualification by riparian ownership to the decision of the county court, whose grant can only be annulled by a regular proceeding for that purpose, though it cannot affect injuriously the rights of property in others. That the grantee would have no such right against the owner of the soil, where a landing place of the ferry happens to intersect a highway, is countenanced by the cases of Chambers v. Furcy, 1 Yeates’ R. 167. and Cooper v. Smith, 9 Serg. & Rawle 26; but even that idea is repelled by Bayley, J. in Peter v. Kendal &c. above cited, and by chancellor Kent in his Commentaries, vol. 3. p. 421. note. d.
As already suggested, the defendants cannot, upon these demurrers, assert a title in themselves, or deny that of the plaintiff. The declaration charges, in effect, a lawful possession of the franchise, and a wrongful disturbance thereof by the defendants; all which is admitted by the demurrers. Moreover, the validity of the franchise cannot be questioned by the defendants in any stage of this collateral action, otherwise than by shewing a title in themselves paramount to that granted by the public. This can only be done by plea or proofs. If the landings be not in a public highway, and the defendants shew a right to the soil, the plaintiff may meet that defence by replying or proving a right to the use of them for the purposes of the ferry, derived from the defendants, or from their ancestors or predecessors. If the landings be in a public highway, it is out of the power of the defendants to shew a paramount title ; for they can have no right to a franchise themselves. That can only be obtained from the public, in consideration of public duties in reference thereto to be performed by the grantee, for the breach or neglect of which he is liable to prosecution and *220 punishment. However strong, therefore, the possible claim of the defendants to the grant of a ferry, it cannot be set up against the grant to the plaintiff or those under whom he claims : and even if the latter was obtained by a fraudulent or false suggestion, it cannot be impeached collaterally ; the only remedy, if any, being by scire facias in the name of the commonwealth to repeal the grant. Silver Lake Bank v. North, 4 Johns. Ch. R. 373. 2 Kent’s Comm. 312. Slee v. Bloom, 5 Johns. Ch. R. 381. 7 Bac. Abr. 137. Scire Facias C. 3. No injustice is done by this doctrine to the owner of the soil over which a public road passes; for what injury does he sustain by the use of the public easement for the passage through, any more than to and from, the watercourse? It'is not like the case of riparian ownership upon a navigable stream, where the public easement consists merely in its navigation; which, as the law is now settled, (3 Kent’s Comm. 425. 426.) gives no right to the community to land upon its banks, and interfere with the wharfage, or other exclusive enjoyment of the owner.
For these reasons, I cannot perceive the propriety of denying the plaintiff a trial before a jury upon the merits of his cause. The structure of his declaration is not such as would in any wise exonerate him from establishing by proofs a good cause of action, or debar the defendants from any lawful defence. And even if the action could be regarded as brought for a common nuisance, the declaration shews a special damage to the plaintiff, of a direct and serious nature; and whether affecting his corporeal or incorporeal hereditament,—his actual possession, or mere use and enjoyment,—his right as a member of the community, or as the owner of a franchise,—is, in that view, wholly immaterial. Nor is a general demurrer sustainable, if the plaintiff has made out a good case, however informally and imrnethodically. It seems to me, however, that *221 there is no good objection to the declaration, whether of form or of substance; but that, on the contrary, it has been drawn with technical skill and precision.
My opinion is, that the judgment of the circuit court is erroneous in sustaining instead of overruling the demurrers, and ought to be reversed.
Allen, J.
The first count of the declaration avers that the plaintiff was possessed of a legally established ferry; that there was a road or landing on each side of the river for approaching the ferry; and that the defendants had injured and obstructed these landings, whereby the plaintiff had been subjected to inconvenience and expense. The second count sets out a possession by the lessee of the plaintiff; describes the injury to the landings as in the first count; and concludes with averring that such injury is to the prejudice of the plaintiff’s rights as reversioner. It is not averred directly in either count, that the plaintiff was possessed of or entitled to the use of the landings, except so far as such possession or use may be held to be incident to the franchise itself.
A ferry, we are informed, is in respect of the landings, and not of the water, (Saville, p. 11. pi. 29.); and as a consequence, that the land on both sides ought to belong to the owner of the ferry. The supreme court of Pennsylvania, in Chambers v. Furey, 1 Yeates 167. and in Cooper v. Smith, 9 Serg. & Rawle 26. recognized the doctrine laid down in Saville as good law, and held that the dedication of land for a public highway gave no right to others to use it without the consent of the owner, for the purpose of landing or receiving freight; that the dedication to the public was for the purpose of passage only, and, subject to that easement, the fee remained in the owner. This, it seems to me, is the true doctrine, notwithstanding the dictum in Peter v. Kendal &c. 6 Barn. & Cress. 703. That was an *222 action for a disturbance to a ferry by setting up another boat. To the objection that it was not averred that the plaintiff was the owner of the landings, it was replied, that ownership was not required : that the ferry owner must have the right to land, and it was sufficient if the landing was in a public road ; or there might have been a grant or reservation of that right. The right to the landings was not there the subject of controversy; the injury complained of did not affect them, and it was not necessary to consider or determine under what circumstances the owner of the ferry might use the road.
A ferry is a valuable franchise created by law. The franchise consists in the right to demand a stipulated compensation for a particular service. Ferries are usually found on public roads; and the public having the right of passage, there can be no question that any individual, in the exercise of this right, may transport himself and property across the stream, and use the road as a landing, and that the owner cannot obstruct him. But it does not follow that he can convert this personal right into a source of emolument, and at his own pleasure use the road as a landing for a ferry. The franchise to exact the tolls is annexed to the land, is private property, and the owner cannot be deprived of it against his consent, without just compensation.
The right of individuals to wharves, landings &c. in cities, referred to in the cases cited from Yeates and Serg. & Rawle, illustrates the doctrine. The dedication of land as a street or road does not affect the right of the owner to this species of property. There is no incompatibility between the private right and the public easement. Our own statute seems to treat the ferry as being in respect of the landings. The owner of the land on both sides, or on one side, of the stream through which a public road passes, is authorized to apply for the establishment of a ferry. The law, it is true, *223 contains no provision for condemning the land on the opposite side, where the person applying is the owner on but one side; but this probably was an inadvertent omission. The law clearly did not proceed upon the supposition, that when a public road was established, the rights of the owner of the soil, as to this subject, were extinguished, and that it would be competent to confer the franchise on a stranger, having no interest, absolute or qualified, in the soil. If I am correct in these views, it follows that where a direct injury is done to the landings, and the declaration proceeds for the recovery of damages for such wrong, there should be an averment of possession, or of some right to the use of the landings ; some averment to put the plaintiff to the proof of his right upon the trial. If the allegation that the plaintiff is possessed of the ferry comprehends the landings as appurtenant, proof of the establishment of the ferry would suffice, and the defendant might be subjected to a double recovery for the same act; to the owner of the fee for the trespasss, and to the ferry owner, who may have had a mere license to use the landing, or no other right than that of any individual in the public road.
For these reasons, I think the second count was bad. The injury alleged is to the inheritance, and consists of damage to the landings, not of the loss consequent upon the obstruction; for the reversioner had no claim on that ground. The injury is set out, and is described to be an injury to the landings. Whether the injury as averred would permanently affect the inheritance or not, is a question of fact for the jury: but the declaration should have averred some right to or interest in the subject itself.
The first count however, it seems to me, was good, and the demurrer should have been overruled. That count, after setting out the injury to the landings, avers, that in consequence of this act, the plaintiff was put to *224 expense; persons being deterred from the use of the ferry, &c. This I think a sufficient averment of special damage arising from the public nuisance in injuring and obsructing the public road. And in a proceeding for this consequential damage to the ferry, the case of Peter v. Kendal &c. is an authority shewing that it was not necessary to aver possession of the landings. For this purpose, and where the injury goes to the enjoyment of the franchise, the grant would be sufficient as against the wrongdoer, and no question could arise as to the right to the landings. I am of opinion, therefore, that the court erred in sustaining the demurrer to this count, and that for this cause the judgment should be reversed.
Stanaud, J.
The court below having sustained a general demurrer to the declaration, the only question for this court is, whether the declaration and each count of it be so radically defective, either for want of right of action in the plaintiff, or for substantial defects in setting forth that right, as to justify the judgment sustaining the demurrer.
The first count distinctly affirms the plaintiff’s possession of a lawfully established ferry, and charges certain wilful acts of the defendants, which, it is averred, consequentially impair the profits of the ferry, and subject the plaintiff to other special damage, of expense and labour in repairing the injuries (caused by the acts imputed to the defendants) to the landings used with and appurtenant to the ferry. The averments are full and sufficient to shew a right of action, if an action can be supported by the owner of a ferry for injuries, mediate or immediate, to the landings, which diminish the profits of the ferry, and subject the owner to labour and expense in the use of his franchise.
The franchise is a right, by prescription or grant, to charge and receive toll for transporting by water, from *225 landing to landing, persons or property. The passage is generally across a watercourse, to and from public ways on either side thereof and leading thereto, and the ferry forms the connecting link between the landings, and is substantially a continuance of the public highway. As the use of landings is indispensable to the exercise of the franchise, the right to use them is incident to the lawful ownership of the ferry ; and the averment of such ownership involves the averment of a right to use the landings as appurtenant thereto. If the road to the water line on each side be a highway, the grant of the franchise, by necessary implication, passes the right to use the highways, as a necessary incident to the exercise of the franchise: if the roads be not highways, the owner of the ferry may be the owner of the soil where the landings are, or may have a right of way for the uses of his ferry from the owner of the soil: if neither of these rights exist, his title to the franchise is defective; and then the action would fail, not because the right to use the landings had not been sufficiently averred, but because the plaintiff had failed in the proof of it, by failing to prove the possession of a lawfully established ferry.
The right to use the landings is then in effect averred ; and the only question is whether the acts of the defendants, and their consequences, as charged in the declaration, entitle the ferry owner to an action.
The acts and consequences are alleged to operate on a subject in which the plaintiff has a right of use, impairing the value of another right to which it is incident, and to the profitable enjoyment of which it is indispensable, and subjecting him to specific damage of labour and expense. I cannot doubt that this is an injury for the redress of which the plaintiff is entitled to his action. The right of passage on a highway is common to all citizens ; and generally, for injuries to the highway, no private action can be sustained. But *226 if any citizen, in the use of this common right, suffers special damage in his person or property from the obstruction or injury of another to the highway, he is entitled to redress by action against that other. Even though the damage consist merely of the inconvenience and expense consequent on the delay of his journey, he is entitled to his action. Rose v. Miles, 4 Mau. & Selw. 101. Greasly v. Codling &c. 2 Bingh. 263. 9 Eng. C. L. R. 407.
The second count is for an injury to the reversionary interest of the plaintiff in the ferry. In an action for the injury to such an interest, the declaration must expressly charge that the act complained of is to the injury of the reversion, unless the act charged be of such nature that it must be to the injury of the reversion. Jackson v. Pesked, 1 Mau. & Selw. 234. As a proper counterpart of this rule, the declaration is not good though it charges the act as an injury to the reversion, if the act charged cannot in its nature be considered as detrimental to the reversion; as for example, entering and taking the growing crops or fruits, to which the tenant would be entitled. The second count in this case charges that the act of the defendants, and its consequences, are injurious to the reversion. The only enquiry therefore, in deciding on the sufficiency of the count, is whether the act and its consequences, as charged, be of such a kind that they cannot be considered injurious to the reversion. The consequence imputed to the act is a destruction of the landing. This surely may be injurious to the right of using the landings, and that right we have seen is incident to the franchise of a lawfully established ferry, and is commensurate in duration with the franchise, and forms part of the reversionary interest therein, as well as of the actual tenancy thereof. The destruction of the landing certainly may be an injury to the reversion, by subjecting the owner to inconvenience and *227 expense in the use of the franchise, diminishing present rents, and reducing the present value of the reversion. It is no answer to the action of the reversioner, that the injury may be temporary, and that before the reversion falls in, and his title to the use and occupation of the ferry vests in possession, the landings may be restored or the injury to them removed. 1 Mau. & Selw. 234. That the owner of the soil where the landings are may have an action for the injury charged in the declaration to the landings, and that that ownership is not alleged to be in the plaintiff and may be in another, so that if this action be sustained the party may be made responsible in two actions brought by different persons, is not, I apprehend, a sufficient reason for denying the action to this plaintiff unless he be the owner of the soil. It is of frequent occurrence that a party is subjected to several actions for the same act. The same act may in its consequences operate on different rights, existing in different persons, in the subject affected by the act. Thus if a party cut a ditch across a public highway, and any citizen, in the use of the public highway, suffer special damage as a consequence of this nuisance, the party cutting the ditch is liable to an action of trespass at the suit of the owner of the soil; to an action on the case for the special damage, at the suit of the citizen who may have sustained it; and to an indictment for the nuisance. Other illustrations might be given.
My opinion therefore is, that however difficult it may be for the plaintiff to connect, by sufficient proof, the alleged consequences with the act charged on the defendants, and to make good the averment of damage to the reversion, and however small that damage may be, the second count shews a cause of action with certainty sufficient to render it good on general demurrer; and consequently that the demurrer in this case ought to have been overruled as to the second as well as the first count.
*228 The judgment of the court of appeals was entered in the following terms : ,
The judgment of the circuit court is reversed with costs : and this court proceeding to render such judgment as the court below ought to have given, it is considered that the demurrers of the defendants in error, to the declaration and each count thereof, be overruled. And the case is remanded for further proceeding, on a writ of enquiry to be awarded by the superior court, unless the said defendants should plead issuably to the action ; and, should such plea or pleas be offered by the defendants, for the trial of the issue or issues that may be made up on such plea or pleas.