## HALE v. RECORD.

No. 5441—Opinion Filed Dec. 7, 1915.

Rehearing Denied Dec. 24, 1918.

(176 Pac. 756.)

1. **Ferries—Public Ferry Franchise—Ownership of Land.**

A public ferry franchise can be conferred only by the government, and must be founded on grant, license, or prescription. Ownership of the soil upon each side of the stream does not confer the right to establish thereon, without grant or license, a public ferry at which tolls are charged.

2. **Same—License by County Commissioners—Effect—Statute.**

The county commissioners of the proper county may grant license to operate a public ferry for a period not exceeding 10 years, as prescribed in section 7643, Rev. Laws 1910. This license is granted upon public bid (section 7644), and the license to conduct a public ferry includes the right to land upon a public highway leading up to the ferry landing, and to discharge freight and passengers thereon.

3. **Same—License—Sale—Statute.**

In the sale of a license to conduct a public ferry, the common-law right of the riparian owner to establish a ferry is recognized by giving such owner a preference right to purchase the franchise at the high bid (section 7646, Rev. Laws 1910) ; but where such opportunity to purchase is given, and the riparian owner neglects or fails to avail himself of it, he thereby waives his rights of proprietorship, and cannot thereafter question the right of the purchaser of the franchise to land his boat and discharge freight and passengers on the public highway duly established through the land of the riparian owner leading to the ferry.

(Syllabus by Galbraith, C.)

Error from District Court, Choctaw County: Summers Hardy, Judge.

Action for injunction by H. H. Hale against E. W. Record. From an order modifying a temporary restraining order, plaintiff brings error. Affirmed.

See, also, 67 Okla. 48, 168 Pac. 420.

I. L. Strange, for plaintiff in error.

Geo. G. Graham and Edwin A. Ellinghausen, for defendant in error.

Opinion by GALBRAITH, C. The plaintiff in error, as plaintiff below, commenced an action in the trial court against the defendant in error, praying an order restraining him from landing a ferryboat against his land and discharging freight and passengers thereon, against his protest and without his consent. Upon a hearing a temporary restraining order was issued, and at a subsequent date and a further hearing this order was modified. From the order modifying the restraining order, this appeal has been prosecuted.

The one error assigned and argued is:

"First. Said court erred in sustaining the motion to dissolve the injunction heretofore issued in this case, in part, by modifying the same so as to permit the landing of the defendant in error in that portion of the premises of the plaintiff in error condemned for a public highway."

It is urged on behalf of this assignment that the defendant in error could not land his boat in said public highway without the consent of the plaintiff in error, and that to permit him to do so would be in violation of the constitutional right guaranteed to the plaintiff in error that his property should not be taken for public use without just compensation. On the other hand, it is argued that inasmuch as the highway

where the landing was made had been legally condemned and opened as a public road. by the county commissioners of Choctaw county, the plaintiff in error had been duly compensated for any and all rights of which he had been deprived by reason of the use of the public highway as a landing for a public ferry.

It appears from the record that the defendant in error is a citizen and resident of the state of Texas; that in October, 1912, he was engaged in operating a ferry across Red River, from Arthur, Texas, to the opposite side of the stream in Choctaw county, Okla., that at that point Red River is the dividing line between the states of Texas and Oklahoma; that the land where the boat was secured and freight and passengers discharged on the Oklahoma side was public, unalloted land, belonging to the Choctaw and Chickasaw Nations; that in December following, at a public sale of the unallotted lands of said Indian Nations, the plaintiff in error purchased this land, and has since been the owner thereof; that subsequently a public highway was condemned and opened by the proper authorities of Choctaw county across this land leading up to the ferry landing. It further appears that the defendant in error is duly licensed to operate a public ferry at that place by the proper authorities of the state of Texas on the Texas side of the stream, and by the proper authorities of Choctaw county on the Oklahoma side.

The question is squarely raised by the assignment of error as to the right of the defendant in error as owner of the franchise for the ferry to use the public highway as a landing place on the Oklahoma side of the stream, the highway having been established across the plaintiff in error's land. There are two distinct lines of authorities on this question. The one line is represented by the decisions of Chief Justice Henderson of North Carolina in the case of Pipkin v. Wynns et al., 13 N. C. 402, wherein it is said:

"The law has prescribed a method, whereby land wanted for public purposes may be taken from an individual. But then the owner is always compensated for what is taken from him. Let it not be taken, as it were, surreptitiously; taken for one purpose and used for another; taken for a road and used for a ferry."

Also, this opinion further says:

"What interest in the land passes to the sovereign by establishing over it a public highway? The right of passing only, and taking the necessary materials (adjoining or convenient) for repair. The residue of the dominion or property remains in the former proprietor. It remains his freehold still. For the uses and purposes of the highway. it is the sovereign's; for all others, it is the former proprietor's. The right of using it as a landing place for a ferry has never been taken from him," etc.

This view of the law was also followed by Judge Dillon, speaking for the Supreme Court of Iowa, in Prosser v. Wapello County, 18 Iowa, 327. And see, also, Appeal of Douglas et al., 85 Kan. 552, 118 Pac. 65, and the long line of cases cited in these opinions.

The other line of decision is represented by the case of Grant v. Drew, 1 Ore. 36, wherein it is said:

"When a road crosses a stream, or body of water, it is not interrupted, but the water and soil beneath it, within the limits of the road, are a continuous part of the road; and a bridge or ferry is also a part of the road as much as the embankments, excavations, pavements, causeways, and other artifical improvements for the ease of travel. The owner of the soil, being paid therefor,, or having waived compensation, has no interest, except as a citizen at large, in the road as such, including its bridges, ferries and other betterments. If he has the exclusive right to land ferryboats on the shores, how can he be denied the exclusive right of placing the ends of a bridge upon them; or the exclusive right of being employed for tolls or other reward to make and keep in repair any other work or improvement that might be needed in the road elsewhere upon his land? It might be expedient to favor him with the preference in all cases, and this the statute does in respect to ferries: but to recognize such a right would be as unreasonable in principle as it is unsupported by authority."

Again, in Mills v. Learn, 2 Ore. 215, it is said, in discussing this right, at page 220 of the opinion:

"If the right to land a ferryboat on a highway upon appellant's land was his own and not to be taken without compensation, certainly the public has notified him that an appropriation of that right was demanded, and, by as strict a course of procedure as in laying out a highway, he was notified that, upon a certain time it would be appropriated, unless he appeared and received that which would be in every view a compensation, viz.: The receiving of that franchise from the state which could only make the landing place of any value to him: compensation was assessed and tendered then. The law declares that he shall be preferred. He has no right to have a public ferry in any way, without the franchise: the landing to him is of no value otherwise. If then, conscious of that claim of appropriation to public use of his lands, he fails to appear and obtain, not only the value of landing

...om the stream, but also an exclusive ferry right, does he not waive any claim to compensation? Does he not declare that it is of no sufficient value to compensate him for the trouble of asking for his rights? Or, does he not consent that what might be of value to him may be given to another? And no court would hold other than that he had consented to such use. In this case the full compliance with the law has been made, and appellant had suffered such a course, when fully conscious of its effect."

In Patrick v. Ruffner, 2 Rob. (Va.) 209, at page 214 (40 Am. Dec. 740), is a concise statement of the general character of a ferry franchise, and how obtained, and what is included therein, as follows:

"A ferry is an incorporeal hereditament acquired from the public, and, in this country, granted by a special act of the Legislature, or by some other competent authority under the provisions of a general law. It comprises not merely the exclusive privilege of transportation, for tolls, across a stream or other body of water, but also the use for that purpose of the respective landings, with the outlets therefrom, without which the grant would be wholly nugatory. It is usually established upon some public road, of which it is a connecting link; but the landings may be altogether private property, in which case the grant supposes that they belong to the grantee, or that he is entitled to the use thereof for the purposes of the ferry. In either case, the use of the landings and outlets is a part of the franchise, so far as the public is concerned. If they constitute portions of the highway, as they do where the ferry is on a duly established road, then the grant is a delegation of the use of the public easement, so far as is necessary for the purposes of the ferry."

Under the laws of Oklahoma, the right to operate a public ferry is a franchise and is vested in the public. Article 3, c. 73, Rev. Laws 1910. Provision is made for its sale by the board of county commissioners for a term not exceeding 10 years, and its acquisition by an individual or company. Section 7643. This must be made at the county courthouse, after notice of the time and place of such sale. Section 7645, Rev. Laws 1910. Section 7646 provides in part:

"The person bidding the highest sum at the sale shall be granted the license, except that the owner of the land where the ferry is located or the keeper of a previous ferry at that place shall be entitled to purchase said license at the amount bid by the highest bidder."

This statute recognizes the right of the owner of the land at the ferry landing to operate a ferry and gives him the right to purchase the franchise from the sovereign at the highest bid, and thus protects in the owner of the soil all of the rights of proprietorship recognized by the common law and the line of decisions relied upon by the plaintiff in error. If the owner of land, when given this opportunity, neglects to avail himself of the right to purchase the franchise and operate the ferry, and the same goes to another, he cannot complain if the purchaser of the franchise exercises the right in its entirety, which includes the right to land upon and use the public highway for the discharge of passengers and freight.

It appears from the record that the defendant in error secured in the regular way the franchise to operate this ferry at this particular place. We presume, in the absence of a showing to the contrary, that the plaintiff in error, as owner of the land, was given an opportunity, as the statute provides, to purchase the franchise at the bid accepted from the defendant in error, and that he declined to take it. This being true, he has waived all his rights as owner of the land, and he is in no position now to challenge the right of the holder of that franchise to fully enjoy the same which full enjoyment includes the right to land the boat in the public highway on the Oklahoma side of the stream, and to discharge freight, and passengers thereon.

It seems that this right was partially, if not fully, recognized by the trial court in modifying the restraining order issued in this cause. In so far as it recognizes the rights of the owner of the franchise to fully enjoy the same, the order should be sustained. In the absence of a cross-petition in error, we are only called upon to say that the order complained of was proper.

We therefore recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.